```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| LOUIS HEMINGWAY AND DONNA HEMINGWAY, H/W AND JULIE HEMINGWAY, a minor by LOUIS HEMINGWAY AND DONNA HEMINGWAY, her parents and natural guardians<br><br>            Plaintiffs,<br><br>  v.<br><br>DOROTHEA SWEENEY,<br><br>            Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>CIVIL NO. 03-1145 (JBS)<br><br><br><br>**OPINION** |

APPEARANCES:

Michael W. Krutman, Esq.
KRUTMAN & EUSTACE, PC
2525 Nottingham Way
Hamilton, NJ 08619
    and
Steven E. Wolfe, Esq. (pro hac vice)
295 Buck Road, Suite 202
Holland, PA 18966
    Attorneys for Plaintiffs

Kevin P. Harper, Esq.
TUCKER & MUNYON
701 Route 73 South, Suite 120
Marlton, NJ 08053
    Attorney for Defendant

**SIMANDLE**, District Judge:

    Plaintiffs, Louis Hemingway, Donna Hemingway and Julie Hemingway, brought suit against Defendant, Dorothea Sweeney, alleging that she drove her vehicle in such a careless, reckless and negligent manner so as to strike the rear of Plaintiffs'

vehicle causing Plaintiffs various injuries and damages.  (Compl. at ¶ 7.)  Plaintiffs contend that they are entitled to noneconomic damages pursuant to the New Jersey Automobile Insurance Cost Reduction Act ("AICRA").  N.J.S.A. 39:6A-8a.  (Pl. Br. at 6.)  Defendant subsequently moved for summary judgment seeking dismissal of the Complaint in its entirety, alleging that Plaintiffs are barred from recovering noneconomic damages by the statutory verbal threshold.  (Def. Br. at 10.)  For the reasons set forth below, Defendant's motion for summary judgment will be denied.

## I. BACKGROUND

On April 20, 2001, Louis Hemingway was driving in his van on High Street in Burlington, New Jersey, with his wife, Donna Hemingway, and four year old daughter, Julie Hemingway.  (Pl. Br. at 1.)  As Plaintiffs' vehicle stopped in traffic, it was struck in the rear by Defendant's car and propelled forward.  (Id.)  Plaintiffs' van was then struck a second time by Defendant's vehicle.  (Id.)  Plaintiffs suffered various injuries as a result of the incident.  (Id.)

Specifically, Donna Hemingway alleges that the impact of the collision was so severe that "her glasses flew from her face." (Id. at 2.)  As a result of her injuries, Ms. Hemingway alleges that she has received ongoing treatment for the past four years, is dependent on multiple prescription medications and may need

2

cervical and shoulder surgeries if further medical treatments continue to fail.  (Id. at 3.)  Ms. Hemingway's alleged injuries include a C5-6 herniation with nerve root damage; chronic cervical and right shoulder pain; labral and rotator cuff tears; brachial plexopathy; neck and right arm pain; left L5-S1 radiculopathy and nerve root dysfunction; L4-5 bulge; acute and chronic cervical, thoracic and lumbosacral strains/sprains; neurocognitive deficits; headaches; cerebral concussion; post-concussion syndrome; post-trauma stress and mood disorders; and adjustment disorders with anxiety and depression.  (Id. at 2-3.) As a result of the alleged injuries, Plaintiff was disabled from her part-time job as an office clerk from the date of the incident until August 1, 2001.  (Id. at 4.)

Mr. Hemingway also claims to have suffered from various injuries as a result of the accident.  Specifically, Mr. Hemingway suffers from L4-5 herniation; L3-4 bulge; L4, L5, S1 radiculopathy; lumbar nerve root dysfunction and neuropathy; acute cervical, thoracic and lumbosacral strains/sprains; irritable bowel syndrome; and adjustment disorders with anxiety and depression.  (Id.)  As a result, Plaintiff alleges that he is required to take multiple prescription medications.  (Id. at 4-5.)  Additionally, Mr. Hemingway was disabled from his job as a cook supervisor with the Federal Bureau of Prisons from May 8,

2001 to June 8, 2001 and thereafter was restricted to light duty through August 17, 2001.[1]  (Id. at 5.)

Plaintiffs subsequently filed suit in this Court, which has jurisdiction under 28 U.S.C. § 1332.  Thereafter, Defendant moved for summary judgment arguing that Plaintiffs Louis and Donna Hemingway cannot meet the verbal threshold requirement set forth in AICRA.  (Def. Br. at 11.)  The issue currently before this Court is whether Plaintiffs meet the verbal threshold and are therefore entitled to noneconomic damages.[2]

## II. **STANDARD OF REVIEW**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might

---

[1]The claim of the minor Plaintiff, Julie Hemingway, was settled by the parties, according to the Joint Final Pretrial Order (filed Jan. 4, 2005) at 2, and her claim is not a subject of this motion.

[2]In the present matter, Defendant does not contend that Plaintiffs failed to file the statutorily required physician certification.  N.J.S.A. 39:6A-8a.  While it is unclear whether the physicians' notes submitted by Plaintiffs to this Court meet this requirement, the medical records do provide evidence of the permanency of the injuries sustained by both Donna and Louis Hemingway.

affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

The nonmoving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a

5

genuine issue.  Fed. R. Civ. P. 56(e).  Plaintiff must do more than rely only "upon bare assertions, conclusory allegations or suspicions."  Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted).  Thus, if the plaintiff's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment.  Anderson, 477 U.S. at 249-50.

### III. DISCUSSION

Plaintiffs allege that they are entitled to noneconomic damages related to injuries arising out of an automobile accident in New Jersey pursuant to AICRA.  (Pl. Br. at 6.)  Under the statute, in order to be entitled to nonecomomic damages, a plaintiff must prove that his injuries fall within one of the following categories: (1) bodily injury resulting in death; (2) dismemberment; (3) significant disfigurement or significant scarring; (4) displaced fractures; (5) loss of a fetus; or (6) a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.  N.J.S.A. 39:6A-8a.

Additionally, in order to satisfy this provision, the plaintiff must provide the defendant with a "certification from a licensed treating physician or a board-certified licensed physician to whom plaintiff was referred by the treating physician" within sixty days of the defendant's answer.  Id.  The

6

certification must state, under penalty of perjury, that the plaintiff sustained a permanent injury as defined infra and should be based on, or refer to, objective medical evidence such as medical testing.  Id.

Here, Defendant argues that under the standard set forth in Oswin v. Shaw, 129 N.J. 290 (1992), an accident victim must prove that her injuries fit within one of the categories outlined in AICRA and that those injuries had a serious impact on her life. (Def. Br. at 5-6.)  However, Oswin is no longer good law. See DiProspero v. Penn, 183 N.J. 477, 506 (2005).  In DiProspero, the New Jersey Supreme Court concluded that the "[l]egislature did not intend to engraft the Oswin language onto the limitation on lawsuit threshold."  Id. at 482.  Therefore, an accident victim does not need to demonstrate that the injuries she sustained had a serious life impact.  Id.  Moreover, a plaintiff is not required to "clear [an] additional hurdle of proving a 'serious injury.'"  Serrano v. Serrano, 183 N.J. 508, 509 (2005).  Thus, in order to state a claim, an accident victim seeking to recover noneconomic damages need only establish that her injury fits within one of the six defined categories outlined in AICRA.[3]  Id.

---

[3] In the instant matter, the Court did not request the parties to submit supplemental briefs, nor did the parties independently do so, regarding the recent New Jersey Supreme Court rulings in both DiProspero or Serrano.  These materials were not requested because the parties were still statutorily required to establish the permanency of the alleged injuries at the time of the filing of their briefs.

Plaintiffs argue that their injuries fit within the sixth category under AICRA. Thus, the only issue in this matter is whether Plaintiffs sustained permanent injuries within a reasonable degree of medical certainty. Under the statute, an injury is permanent if "the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." N.J.S.A. 39:6A-8a.

Plaintiffs here have allegedly suffered from herniated discs and disc bulges. In Martin v. Chhabra, a New Jersey court concluded that a herniated disc and disc bulge were permanent injuries as defined under AICRA. 374 N.J. Super. 387, 393 (App. Div. 2005). The court reached this conclusion partially based on one medical expert who testified that plaintiff's injuries were "permanent in nature" and "will result in 'acute, serious flare-ups of these conditions in the future.'" Id. Additionally, another medical expert opined that plaintiff's conditions have "not healed to function normally and will not heal to function normally with further medical treatment." Id. Therefore, the Martin court held that plaintiff satisfied the objective permanent injury threshold. Id.

In Iarranpino v. Reszkowski, plaintiff alleged that a herniated disk caused by a car accident was a permanent injury under AICRA and sued the defendant for noneconomic damages. 2003 WL 23281566, at * 1-2 (N.J. Super. Ct. App. Div. Oct. 2, 2003).

On appeal, the court concluded that a certification from plaintiff's physician who attested to the permanency of her injury and the disability resulting therefrom, was sufficient, at least for summary judgment purposes, to satisfy the requirements set forth in AICRA. Id. at *2.

Plaintiffs' claims here present similar issues as those discussed in both Martin and Iarranpino, as there is a genuine dispute of material fact over the permanency of Plaintiffs' alleged injuries. Ms. Hemingway submitted to this Court an extensive medical record of her alleged injuries and related symptoms. Dr. Ashok Thanki, a neurology specialist, opined in a letter dated May 30, 2001, that based on Plaintiff's MRI films, she suffered from intractable post-traumatic pain in her neck and upper right extremity, herniated cervical disc and bulging disc, right cervical radiculopathy and pain in the lower back and lumbar disc bulge. (Pl. Ex. B.) More recently, in a letter dated May 17, 2004, Dr. David M. Petro notes that his diagnosis of Plaintiff's injuries remains unchanged, including: (1) acute cervical sprain/strain; (2) cervical herniated disc; (3) cervical radiculopathy; (4) right upper trunk brachial plexopathy; (5) thoracic sprain/strain; (6) lumbosacral sprain/strain; (7) lumbar disc bulge; (8) left radiculopathy; (9) anterior labral tear; (10) right partial rotator cuff tear; (11) cerebral concussion; (12) adjustment disorder; and (13) post-traumatic stress

disorder. (Pl. Ex. A.) There is no evidence from Dr. Petro's medical notes, or otherwise in the record, which suggests that these injuries have been resolved.

Indeed, Plaintiff's treatment for these injuries has been ongoing for four years. (Pl. Br. at 3.) Additionally, in one medical report from Dr. Petro dated November 10, 2003, he states that, with a reasonable degree of medical certainty, Plaintiff's symptoms "will continue for an indefinite period of time moving forward." (Pl. Ex. A.) Further, in April of 2004, Dr. Robert Simcsak noted in two separate reports that month that Ms. Hemingway's "condition is in a chronic stage with frequent acute relapses." (Pl. Ex. M.) Similarly, Dr. Thanki opined that there is no guarantee of a cure or relief of pain for Plaintiff even if cervical spine surgery is performed. (Pl. Ex. B.)

Here, Ms. Hemingway does not merely rely on allegations asserted in her pleadings to rebut Defendant's motion for summary judgment. Instead, she provides this Court with evidence which suggests there is a genuine issue of material fact as to the permanency of her injuries. Therefore Defendant's motion for summary judgment regarding Ms. Hemingway's claim will be denied.

Similarly, Defendant's motion for summary judgment regarding Mr. Hemingway's claim will be denied. In a note dated April 30, 2001, one of Mr. Hemingway's doctors opines that he suffers from a muscle spasm in his cervical spine, as revealed in an x-ray; a

10

bulging disc with a small herniated disc, as revealed in a MRI; and lumbar radiculopathy, as revealed in an EMG. (Pl. Ex. R.) As to the permanency of these injuries, Dr. Petro opined on December 10, 2001 that Plaintiff's herniated disc resulted in permanent damage to nerve roots in the lumbar area. (Pl. Ex. at R.) Further, he noted that "it is with guarded prognosis that his low back remains asymptomatic." (Id.) On January 9, 2004, Dr. Petro again stated that Plaintiff "suffered from permanent injuries to his lumbar spine" as a result of the car accident on April 20, 2001. Additionally, he noted that Mr. Hemingway remains functional due to his daily use of prescription medication and without it he would have "little choice but to consider invasive procedures," which would require Plaintiff to stop working, resulting in total disability. (Id.)

Despite these alleged injuries and symptoms, by May 25, 2001, Dr. Petro noted that Plaintiff had "improved substantially . . . with only intermittent low back pain." (Id.) By September 19, 2001, Dr. Petro noted that Plaintiff's following conditions were resolved: (1) acute cervical sprain/strain; (2) acute lumbosacral sprain/strain; and (3) irritable bowel syndrome. (Id.) In fact, the only remaining unresolved condition was a herniated disc. (Id.) As a result, Dr. Petro discharged Plaintiff from his care and noted that he should return if his back pain became exacerbated. (Id.) That same report indicates

that Plaintiff returned to work on full unrestricted duty and has been working overtime with only occasional pain.  (Id.)

More recently, on December 4, 2003, Mr. Hemingway testified that he was "still doing everything that [he] did before [the accident]."  (Pl. Ex. X at 33:22-24.)  Further, Plaintiff stated that he still participates in sporting activities, such has running, golfing and basketball, which he enjoyed prior to the accident.  (Id. at 29:18-19; 37:14-22; 36:2-4.)  That the back pain has not become aggravated does not render his herniated disc any less permanent.  Mr. Hemingway has adduced sufficient evidence of the permanency of his injuries within a reasonable degree of medical probability, consisting of his herniated disc, in accord with N.J.S.A. 39:6A-8a(b).  Therefore, Defendant's motion for summary judgment as it pertains to Mr. Hemingway's claim will also be denied.

## IV. CONCLUSION

For the reasons expressed in this Opinion, the motion for summary judgment by Defendant Dorothea Sweeney will be denied.


**July 27, 2005**                   s/ Jerome B. Simandle
Date                                JEROME B. SIMANDLE
                                    United States District Judge